**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KOLTON G.KROTTINGER,** *Plaintiff,* | § § § | |
| **v.** | § | **Civil Action No.** 4:26-cv-29 |
| **ROGER DEEDS**, in his personal capacity, **JAMES LUCKIE**, in his personal capacity, **RYAN SINCLAIR**, in his personal capacity, and **HOOD COUNTY, TEXAS**; *Defendants* | § § § § § § § § § | |

## COMPLAINT

Plaintiff **Kolton Krottinger** brings this action under 42 U.S.C. § 1983 and the Privacy Protection Act, 42 U.S.C. § 2000aa, against Defendants for violating his clearly established constitutional rights. **Sheriff Roger Deeds** was the driving force behind the investigation, arrest, and prosecution of Plaintiff—a local journalist and political critic—for posting a satirical political meme. **District Attorney Ryan Sinclair**, who knew Plaintiff personally, participated in the investigation and directed that a prior restraint be imposed on all of Plaintiff's social media activity. When the prosecution attracted public scrutiny, Sinclair fled—fabricating a false conflict of interest to escape accountability while the prosecution continued. The case collapsed when the State conceded it could not establish probable cause. Yet Sheriff Deeds doubled down, publicly defending the arrest as lawful and hiding critical comments on official social media. Meanwhile, Defendants seized Plaintiff's cell phone, failed to list it on any inventory, never obtained or presented a search warrant, and took months to return it, presumably

after unlawfully searching it—depriving Plaintiff of journalistic materials protected by the Privacy Protection Act. This lawsuit seeks to vindicate Plaintiff's constitutional rights and deter the weaponization of criminal process against political critics.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Privacy Protection Act, 42 U.S.C. § 2000aa.

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because all events giving rise to the claims occurred in Hood County, Texas, which is within the Northern District of Texas, Fort Worth Division.

3. Pursuant to 42 U.S.C. §§ 1983 and 1988, and 42 U.S.C. § 2000aa-6, this Court may award nominal, compensatory, and punitive damages, as well as reasonable attorney's fees, costs, and equitable relief.

## II. PARTIES

4. Plaintiff KOLTON KROTTINGER ("Plaintiff" or "Krottinger") is a citizen of the United States and a resident of Hood County, Texas. He is an honorably discharged United States Navy Veteran, a community activist, an online journalist who operates several news pages on Facebook, and the founder and President of Anxiety Solutions of America ("ASA"), a nonprofit mental health center that serves Veterans and first responders. The Texas State Senate honored ASA in 2025 for its service to Veterans. Plaintiff's journalism work includes

reporting on local government, interviewing candidates for office, and publishing political commentary and analysis to the public.

5. Defendant ROGER DEEDS ("Sheriff Deeds") is the elected Sheriff of Hood County, Texas, and was at all relevant times the final policymaker for the Hood County Sheriff's Office. He is sued in his personal capacity.

6. Defendant JAMES LUCKIE ("Investigator Luckie") was at all relevant times a sworn Deputy and Investigator for the Hood County Sheriff's Office. He is sued in his personal capacity.

7. Defendant RYAN SINCLAIR ("DA Sinclair") is the elected District Attorney for Hood County, Texas. He is sued in his personal capacity for his investigative conduct and administrative actions, which fall outside the scope of absolute prosecutorial immunity. *See Wearry v. Foster*, 33 F.4th 260 (5th Cir. 2022); *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021).

8. Defendant HOOD COUNTY, TEXAS ("Hood County" or "the County") is a political subdivision of the State of Texas. Hood County is sued under 42 U.S.C. § 1983 for the unconstitutional policies and decisions of Sheriff Deeds, who serves as the final policymaker for law enforcement in Hood County, and under the Privacy Protection Act, 42 U.S.C. § 2000aa, for the unlawful seizure and retention of Plaintiff's journalistic materials.

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's Protected Speech and Journalism

9. Plaintiff is actively involved in Hood County local politics. He operates the "Hood County Sheepdogs" Facebook page, where he and others post

political commentary, satire, and interviews with local candidates for office. The page contains a disclaimer making clear it is for satire and jokes.

10. Plaintiff is a journalist. Through his Hood County Sheepdogs page and other platforms, he reports on local government, interviews candidates, and publishes political commentary and analysis to the public on matters of public interest. His work constitutes journalism protected by the First Amendment and the Privacy Protection Act.

11. Plaintiff is a frequent and vocal critic of Sheriff Deeds and other political figures in Hood County.

12. The Hood County Sheepdogs page has multiple administrators. When a post is made on behalf of the page, the identity of the individual administrator who made the post is not publicly visible.

13. On or about October 1, 2025, a meme was posted on the "Granbury Breaking News" Facebook page by the Hood County Sheepdogs account.

14. The meme depicted Tina Brown, a local political activist who is a critic of Plaintiff. The meme was intended as political satire commenting on the rivalry between Tina Brown and Monica Brown, a candidate for Granbury ISD Trustee. Tina Brown supported Monica Brown's opponent, Dr. Calvin Lawrence.

15. The meme was clearly satirical political commentary—speech at the core of First Amendment protection. *See Bailey v. Iles*, 87 F.4th 275, 283 (5th Cir. 2023) ("The First Amendment's protections apply to jokes, parodies, satire, and the like, whether clever or in poor taste.").

## B. DA Sinclair's Prior Knowledge of Plaintiff

16. DA Sinclair knew Plaintiff personally before the events giving rise to this lawsuit.

17. Prior to Plaintiff's arrest, DA Sinclair was invited to serve on the board of directors of Anxiety Solutions of America, the nonprofit that Plaintiff founded and operates.

18. DA Sinclair declined the invitation before he was ever introduced to the board or voted on.

19. DA Sinclair was thus aware that Plaintiff was a political activist, journalist, and critic of local officials in Hood County. He knew Plaintiff operated a Veterans' mental health nonprofit. He knew who Plaintiff was.

### C. Sheriff Deeds as the Driving Force Behind the Prosecution

20. Sheriff Deeds was the driving force behind the investigation, arrest, and prosecution of Plaintiff.

21. Following a complaint from Tina Brown, Investigator Luckie—under Sheriff Deeds' supervision—opened an investigation into the satirical meme.

22. Hood County is a small jurisdiction of approximately 71,000 residents. Sheriff Deeds and DA Sinclair work closely together on criminal matters. The investigation and prosecution of Plaintiff for a satirical meme about a local school board election was coordinated between the Sheriff's Office and the District Attorney's Office.

23. The timing of Plaintiff's arrest—November 5, 2025, one day after the election in which Plaintiff had been actively involved—and the immediate imposition of a prior restraint on all social media suggest a coordinated effort to silence a political critic.

### D. The Facially Deficient Affidavit

24. On November 3, 2025, Investigator Luckie swore out a criminal complaint before Justice of the Peace Sissy Freeman charging Plaintiff with "Online Impersonation" under Texas Penal Code § 33.07(a), a third-degree felony.

25. The criminal complaint and supporting affidavit were facially deficient and failed to establish probable cause.

26. Investigator Luckie alleged that he obtained a search warrant for Facebook records from Meta, Inc., and that the records showed Plaintiff was the "owner" of the Hood County Sheepdogs page.

27. Investigator Luckie further alleged that he located "an IPv6 address attached to the post and that the IP address "is assigned to the T-Mobile Network."

28. Investigator Luckie also attested that Plaintiff's phone "uses the T-Mobile network."

29. The affidavit did not allege that the specific IP address belonged to Plaintiff's phone or any device owned by Plaintiff. It did not allege that the IP address was linked to any device in Texas. It merely alleged that someone who posted from the Hood County Sheepdogs page used T-Mobile—a network serving millions of subscribers nationwide—and that Plaintiff also uses T-Mobile.

30. Hood County has approximately 71,000 residents, many of whom use T-Mobile as their cellular provider.

31. The affidavit failed to address the undisputed fact that the Hood County Sheepdogs page has multiple administrators, any of whom could have made the post.

32. Even assuming Plaintiff made the post, the affidavit failed to establish probable cause that the satirical meme violated Texas Penal Code § 33.07(a), which requires proof that the defendant acted "with the intent to harm, defraud, intimidate, or threaten any person." Political satire, by definition, lacks such intent. *See Ex parte Bradshaw*, 501 S.W.3d 665, 677 (Tex. App.—Dallas 2016, pet. ref'd) (upholding § 33.07 but recognizing that "most political satire and advertising parodies would not run afoul of the statute").

33. A reasonable officer would have known that arresting someone for posting a satirical political meme violates clearly established First Amendment rights. *See Bailey v. Iles*, 87 F.4th 275, 288-90 (5th Cir. 2023) (denying qualified immunity where officer arrested plaintiff for satirical Facebook post because "no reasonable officer could have found probable cause").

### E. The Arrest and Unlawful Seizure of Plaintiff's Phone

34. On November 5, 2025—the day after the November 4 local elections—Hood County Sheriff's deputies arrested Plaintiff in a public parking lot, causing embarrassment and reputational harm.

35. Plaintiff was booked into the Hood County jail. Bond was set at $10,000.

36. At the time of Plaintiff's arrest, law enforcement officers seized Plaintiff's cell phone.

37. The phone was not listed on the inventory of seized property. No search warrant for the phone was ever obtained or presented to Plaintiff.

38. When Plaintiff was released from custody, his phone was not returned to him. He was told it was "not on the inventory list."

39. Plaintiff's phone contained: (a) an application he uses to communicate with Veterans experiencing mental health crises; (b) information necessary to complete an application for a $400,000.00 Texas Veterans Commission grant; (c) journalistic work product, including notes, contacts, and communications related to his news coverage; and (d) personal photographs, communications, and data.

40. Upon information and belief, Defendants searched or caused to be searched Plaintiff's cell phone without obtaining a search warrant, in violation of Riley v. California, 573 U.S. 373 (2014).

41. On December 5, 2025, the court discharged Plaintiff and vacated all bond conditions. At that point, there was no legal basis to continue retaining Plaintiff's property.

42. On December 22, 2025, the prosecution was formally rejected for insufficient evidence. There remains no legal basis to retain Plaintiff's phone.

43. The continued retention of Plaintiff's phone constituted an ongoing unreasonable seizure in violation of the Fourth Amendment and an ongoing violation of the Privacy Protection Act.

### F. The Prior Restraint on Speech

44. At the direction of DA Sinclair and Sheriff Deeds, Justice of the Peace Earl "Dub" Gillum imposed a complete ban on Plaintiff's access to social media as

a condition of bond: "NO ACCESS TO SOCIAL MEDIA (FACEBOOK, INSTAGRAM, TIKTOK, ETC.)"

45. This sweeping prior restraint prohibited Plaintiff—an online journalist whose income derives almost entirely from social media—from engaging in any online political discourse while being prosecuted for political speech.

46. DA Sinclair's direction to seek a prior restraint on all social media—for someone being prosecuted for speech—demonstrates that his involvement extended beyond neutral prosecution. He sought to silence Plaintiff, a known political critic whom Sinclair knew personally.

### G. DA Sinclair's False Recusal and Flight from Accountability

47. On November 19, 2025, after the prosecution attracted media attention and public criticism, DA Sinclair filed a motion to recuse himself from Plaintiff's case.

48. In his motion, DA Sinclair represented to the court that he had "served on the board of Anxiety Solutions of America, a non-profit operated by Kolton Krottinger, for a short period of time."

49. This statement was false. DA Sinclair never served on the board of Anxiety Solutions of America.

50. The next day, ASA President Andrea Jackson submitted a letter categorically denying DA Sinclair's claim: "Ryan Sinclair has stated that he is part of our board. This statement is not true. Sinclair has never made a presence at any of our meetings, nor has his presence ever been made to our knowledge even to the ranch."

51. ASA Board Member, and elected Hood County Constable Scott London confirmed: "I was aware Ryan Sinclair had been invited to join our board, but I was told he declined the invitation before our board met to introduce him. Because he was never introduced to be a board member, he was never voted on."

52. DA Sinclair's false recusal was not the act of a neutral prosecutor with a genuine conflict. It was a calculated attempt to escape accountability for an improper prosecution while allowing the case to continue under a special prosecutor. Rather than admit the prosecution was improper, he fabricated a conflict and fled.

53. DA Sinclair's false statement to the court was not an advocative function; it was an administrative act and deception of the judicial process. *See Wearry v. Foster*, 33 F.4th 260, 272 (5th Cir. 2022) (prosecutorial conduct is less "intimately associated with the judicial phase" when it involves "side-stepping" the judicial process).

54. Former Hood County Republican Party Chair Nate Criswell stated: "Politicians lie, but prosecutors should be beyond reproach. If DA Ryan Sinclair is willing to lie about his role on the board of the nonprofit, what else would he and the investigators lie about?"

### H. The Collapse of the Prosecution

55. Following DA Sinclair's recusal, the court appointed Ellis County District Attorney Lindy Beaty as Special Prosecutor.

56. Plaintiff filed a Motion for Examining Trial pursuant to Article 16.17 of the Texas Code of Criminal Procedure, which entitles a defendant to a hearing at which the State must establish probable cause.

57. The State responded that it "is not prepared to present evidence at the examining trial" and "agrees that Defendant is entitled to the discharge of his bond and release pursuant to Article 16.17 of the Code of Criminal Procedure."

58. On December 5, 2025, Justice of the Peace Earl "Dub" Gillum found that the State did not establish probable cause and entered an Order of Discharge, ordering that Plaintiff "is hereby DISCHARGED from this charge."

59. On December 22, 2025, the Ellis County District Attorney issued a letter formally rejecting the prosecution, stating: "[T]here is insufficient evidence to establish that Kolton Krottinger was the person who created or posted the online material that was the basis of the alleged offense."

### I. Sheriff Deeds Doubles Down: Ratification and Closure of Public Forum

60. While DA Sinclair fled from the prosecution, Sheriff Deeds doubled down.

61. After Plaintiff's arrest, Sheriff Deeds released a public statement via the Hood County Sheriff's Office Facebook page encouraging citizens to report others for "bullying, harassment, threats, and similar" conduct.

62. In that statement, Sheriff Deeds acknowledged that "[m]uch of what is posted online is protected by the 1st Amendment" but pointed to Plaintiff's arrest as "a recent and notable case" where speech "constitutes a criminal offense."

63. Sheriff Deeds knew or should have known that posting a satirical political meme is not a crime.

64. On December 3, 2025—after the State had conceded it could not establish probable cause—Sheriff Deeds issued another public statement claiming

that "after the evidence was gathered and probable cause established, an arrest warrant was issued" and that "every step was taken in accordance with Texas law and protected constitutional due-process rights." This statement, made with full knowledge that the prosecution had collapsed, constitutes *ratification* of the unconstitutional arrest.

65. The Hood County Sheriff's Office operates an official Facebook page that serves as its primary platform for communicating with the public about law enforcement activities, policies, and incidents.

66. From its creation until recently, the Hood County Sheriff's Office Facebook page allowed members of the public to post comments on the department's posts. By enabling public comments, Sheriff Deeds created a designated public forum for discussion of matters of public concern, including police accountability and law enforcement practices.

67. Plaintiff's arrest generated significant public attention and criticism from community members who recognized that arresting someone for a satirical political meme violates constitutional rights.

68. Following public criticism of both the arrest and Sheriff Deeds' defense of that arrest, Sheriff Deeds restricted and ultimately closed public comments (absent select individuals chosen by Hood County) on the Hood County Sheriff's Office Facebook page.

69. On December 29, 2025, a post recognizing Sheriff's Office employees showed eight comments had been made. However, when Plaintiff viewed the post, only one comment was visible and he was prevented from commenting. Facebook

displayed the notice: "Hood County Sheriff's Office limited who can comment on this post."

70. The timing and context of the forum closure demonstrate that it was motivated by a desire to silence criticism of the unconstitutional arrest—not by any viewpoint-neutral policy.

### J. Evidence of Retaliatory Atmosphere

71. The retaliatory atmosphere within the Hood County Sheriff's Office is further demonstrated by the conduct of Deputy Welty, a supervisor at HCSO, who told a third party that Plaintiff—whom Welty referred to as "fat, stupid, and a criminal"—had "kiddie porn" on his phone.

72. This statement was categorically false. Plaintiff did not have child pornography on his phone. No such material was found, and no such charges were ever filed.

73. Deputy Welty's false and defamatory statement, made to a non-law-enforcement third party, demonstrates the hostile and retaliatory environment within HCSO toward Plaintiff and supports an inference of retaliatory motive throughout the investigation and prosecution.

### K. Plaintiff's Damages

74. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff suffered injuries and damages including but not limited to:

a. Loss of liberty and unlawful detention;

b. Loss of employment and business opportunities;

c. Lost income and revenue;

d. Nominal damages due to First Amendment violations;

e. Deprivation of property;

f. Inability to perform his work as a journalist and serve Veterans through his nonprofit;

g. Attorney's fees and costs incurred in defending against the criminal charge;

h. Severe reputational harm, public humiliation, emotional distress, and mental anguish.

## IV. CLAIMS FOR RELIEF

### COUNT I
### FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983
### (Against Defendants Luckie, Deeds, and Sinclair)

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Plaintiff engaged in constitutionally protected speech, including operating news pages on Facebook, participating in political discourse, criticizing local officials including Sheriff Deeds, and engaging in or being associated with satirical political commentary.

77. Defendants Luckie, Deeds, and Sinclair, acting under color of state law, took adverse actions against Plaintiff that would chill a person of ordinary firmness from continuing to engage in protected speech.

78. Investigator Luckie swore out a facially deficient criminal complaint, arrested Plaintiff for protected political speech, and seized Plaintiff's cell phone without a warrant.

79. Sheriff Deeds supervised the investigation, publicly labeled Plaintiff's protected speech as criminal conduct, ratified the unconstitutional

arrest after the prosecution collapsed, and engaged in viewpoint discrimination to suppress criticism.

80. DA Sinclair, who knew Plaintiff personally from having been invited to join Plaintiff's nonprofit board, participated in the investigation, directed that a prior restraint be imposed on all of Plaintiff's social media activity, and then fabricated a false conflict of interest to escape accountability when the prosecution attracted public criticism.

81. Defendants' adverse actions were substantially motivated by Plaintiff's protected speech and his criticism of Sheriff Deeds and other Hood County officials. Evidence of retaliatory motive includes:

a. The timing of the arrest one day after the election in which Plaintiff had been actively involved;
b. The selective prosecution of Plaintiff despite multiple administrators on the Hood County Sheepdogs page;
c. DA Sinclair's prior knowledge of Plaintiff and his political activities;
d. DA Sinclair's direction to impose a prior restraint on all social media—silencing a journalist and critic;
e. DA Sinclair's fabricated recusal and flight from accountability;
f. Sheriff Deeds' public statements labeling protected speech as criminal;
g. Sheriff Deeds' viewpoint discrimination on official social media;
h. The seizure and continued retention of Plaintiff's phone without warrant or inventory;
i. Deputy Welty's false and defamatory statements about Plaintiff.

82. The law was clearly established at the time of Defendants' conduct. *See Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

83. Defendants are not entitled to qualified immunity because their conduct violated clearly established law and no reasonable official could have believed that investigating, arresting, and prosecuting someone for posting a satirical political meme was lawful.

84. DA Sinclair is not entitled to absolute prosecutorial immunity for the conduct alleged herein. His participation in the investigation, his direction to impose a prior restraint, and his false statement to the court were not advocative functions "intimately associated with the judicial phase of the criminal process." *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Wearry v. Foster*, 33 F.4th 260, 271-72 (5th Cir. 2022).

85. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the injuries and damages set forth above.

## COUNT II
## FOURTH AMENDMENT – FALSE ARREST
## 42 U.S.C. § 1983
## (Against Defendant Luckie)

86. Plaintiff incorporates by reference all preceding paragraphs.

87. On November 5, 2025, Plaintiff was arrested pursuant to a warrant obtained by Investigator Luckie.

88. The arrest was made without probable cause. The warrant affidavit was facially deficient because it:

a. Failed to link the IP address to Plaintiff's device or any device in Texas;

b. Relied solely on the fact that both the poster and Plaintiff use T-Mobile, a network with millions of subscribers;

c. Failed to account for multiple administrators on the Hood County Sheepdogs page; and

d. Failed to establish that satirical political commentary satisfies the intent element of Texas Penal Code § 33.07(a).

89. A warrantless arrest without probable cause violates clearly established Fourth Amendment rights. *Bailey v. Iles*, 87 F.4th at 287. The same principle applies to an arrest pursuant to a warrant that is facially deficient and fails to establish probable cause.

90. Investigator Luckie was objectively unreasonable in believing probable cause existed. *See id.* at 286-87.

91. Investigator Luckie is not entitled to qualified immunity because his conduct violated clearly established law and no reasonable officer could have believed probable cause existed on the facts alleged in the affidavit.

92. As a direct and proximate result of Investigator Luckie's conduct, Plaintiff suffered the injuries and damages set forth above.

**COUNT III**
**FOURTEENTH AMENDMENT – MALICIOUS PROSECUTION**
**42 U.S.C. § 1983**
**(Against Defendant Luckie)**

93. Plaintiff incorporates by reference all preceding paragraphs.

94. Investigator Luckie initiated criminal proceedings against Plaintiff by swearing out a criminal complaint charging Plaintiff with felony Online Impersonation under Texas Penal Code § 33.07(a).

95. There was no probable cause for the criminal proceedings, as demonstrated by:

a. The facial deficiencies in the warrant affidavit;

b. The State's concession that it could not establish probable cause at the examining trial;

c. The court's Order of Discharge finding no probable cause; and

d. The Ellis County District Attorney's formal rejection of the prosecution for insufficient evidence.

96. The criminal proceedings terminated in Plaintiff's favor. On December 5, 2025, the court entered an Order of Discharge. On December 22, 2025, the prosecution was formally rejected.

97. Investigator Luckie acted with malice. He targeted Plaintiff because of his protected political speech and criticism of local officials. Despite multiple administrators on the Hood County Sheepdogs page, only Plaintiff—a known critic of Sheriff Deeds—was investigated, arrested, and prosecuted.

98. As a direct and proximate result of Investigator Luckie's conduct, Plaintiff suffered the injuries and damages set forth above.

**COUNT IV**
**FIRST AMENDMENT – CLOSURE OF PUBLIC FORUM TO SILENCE CRITICISM**
**42 U.S.C. § 1983**
**(Against Defendant Deeds)**

99. Plaintiff incorporates by reference all preceding paragraphs.

100. The First Amendment prohibits government officials from excluding persons from a public forum because of their viewpoint. *Robinson v. Hunt County*, 921 F.3d 440, 446 (5th Cir. 2019).

101. The Hood County Sheriff's Office operates an official Facebook page that serves as the department's primary platform for communicating with the public about law enforcement activities, policies, and incidents.

102. The Facebook page is a government-operated platform funded by taxpayer dollars and used for official government communications.

103. From its creation until recently, the Hood County Sheriff's Office Facebook page allowed members of the public to post comments on the department's posts. By enabling public comments, Sheriff Deeds created a designated public forum for discussion of matters of public concern, including police accountability and law enforcement practices.

104. On or about November 2025, Sheriff Deeds posted an official statement on the HCSO Facebook page defending Plaintiff's arrest, pointing to it as "a recent and notable case" where speech "constitutes a criminal offense."

105. This post and subsequent posts defending the arrest generated significant public criticism from community members who recognized that arresting someone for a satirical political meme violates constitutional rights.

106. Following public criticism of both the arrest and Sheriff Deeds' defense of that arrest, Sheriff Deeds restricted and ultimately closed public comments on the Hood County Sheriff's Office Facebook page, while permitting select individuals to comment. Every post now displays: "Hood County Sheriff's Office limited who can comment on this post."

107. The closure of the forum was not based on any viewpoint-neutral policy. Rather, the timing and context demonstrate that the closure was motivated

by a desire to silence criticism of the unconstitutional arrest and Sheriff Deeds' defense of that arrest.

108. By closing public comments after controversy and criticism arose, Sheriff Deeds has restricted access to a designated public forum that he previously created and maintained.

109. The closure has the effect and intent of allowing only the government's viewpoint to be expressed regarding controversial police conduct while preventing citizens—including Plaintiff—from expressing contrary viewpoints on the official platform.

110. The closure of the forum constitutes viewpoint discrimination even though it applies to all commenters because: (a) the timing proves it was motivated by desire to silence criticism; (b) it allows Sheriff Deeds to post controversial defenses of unconstitutional conduct without permitting public response; and (c) it has the effect of ensuring only the government's viewpoint is expressed on the official platform regarding matters of intense public concern. *See Robinson v. Hunt County*, 921 F.3d 440 (5th Cir. 2019).

111. The restriction prevents Plaintiff and concerned citizens from engaging in constitutionally protected speech on matters of public concern—specifically, police accountability and the constitutional violations described in this Complaint.

112. At the time Sheriff Deeds closed comments, it was clearly established that government officials cannot exclude persons from a public forum based on viewpoint and cannot close a designated public forum to silence criticism.

113. Plaintiff has suffered injury as a result of the forum closure. He has been deprived of his right to participate in public discourse on matters of public concern, specifically the constitutional violations he experienced and Sheriff Deeds' defense of those violations. This exclusion from the public forum would chill a person of ordinary firmness from continuing to engage in protected speech.

114. As a direct and proximate result of Sheriff Deeds' unconstitutional closure of the public forum, Plaintiff has suffered damages including violation of his constitutional rights, silencing of his speech on matters of public concern, and exclusion from participation in public debate about police accountability.

## COUNT V
## MUNICIPAL LIABILITY
## 42 U.S.C. § 1983
## (Against Defendant Hood County)

115. Plaintiff incorporates by reference all preceding paragraphs.

116. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 when an official policy or the decision of a final policymaker causes a constitutional deprivation.

117. Sheriff Deeds is the elected Sheriff of Hood County and the final policymaker for the Hood County Sheriff's Office. His official decisions and actions constitute Hood County policy.

118. Sheriff Deeds was the driving force behind the constitutional violations alleged herein. He supervised the investigation of Plaintiff, publicly encouraged citizens to report others for exercising First Amendment rights, labeled Plaintiff's protected speech as criminal, and personally engaged in viewpoint discrimination on the official HCSO Facebook page.

119. Sheriff Deeds ratified the unconstitutional arrest, prosecution, and seizure of Plaintiff's property. On December 3, 2025—after the State had conceded it could not establish probable cause—Sheriff Deeds issued a public statement defending the arrest. This statement, made with full knowledge of the prosecution's collapse, constitutes ratification. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

120. Sheriff Deeds' direct involvement in and ratification of the constitutional violations, as final policymaker, make Hood County liable under § 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

121. As a direct and proximate result of Hood County's policies and the decisions of its final policymaker, Plaintiff suffered the injuries and damages set forth above.

**COUNT VI**
**FOURTH AMENDMENT – UNLAWFUL SEIZURE OF CELL PHONE**
**42 U.S.C. § 1983**
**(Against Defendant Luckie)**

122. Plaintiff incorporates by reference all preceding paragraphs.

123. The Fourth Amendment prohibits unreasonable seizures of property.

124. At the time of Plaintiff's arrest on November 5, 2025, Defendant seized Plaintiff's cell phone.

125. The phone was not listed on the inventory of seized property. No search warrant for the phone was ever obtained or presented to Plaintiff.

126. Plaintiff's phone contained journalistic work product, an application for communicating with Veterans in crisis, information necessary for a $400,000.00 grant application, and personal data.

127. When Plaintiff was released from custody, his phone was not returned. He was told it was "not on the inventory list."

128. The seizure of Plaintiff's phone is unreasonable because:

a. There was no probable cause to believe Plaintiff had committed any crime, as the State conceded and the court found;

b. No warrant was ever obtained for the phone;

c. The phone was not listed on any inventory;

d. The criminal charges were discharged on December 5, 2025, and rejected on December 22, 2025, eliminating any evidentiary justification.

129. Under *Riley v. California*, 573 U.S. 373 (2014), police cannot search a cell phone seized incident to arrest without a warrant. Upon information and belief, Defendant Luckie searched or caused to be searched Plaintiff's phone without a warrant.

130. A search incident to an unlawful arrest is unlawful.

131. Investigator Luckie is not entitled to qualified immunity because the right to be free from unreasonable seizures of property was clearly established.

132. As a direct and proximate result of Defendant Luckie's unlawful seizure, Plaintiff suffered damages.

**COUNT VII**
**VIOLATION OF THE PRIVACY PROTECTION ACT**
**42 U.S.C. § 2000aa**
**(Against Defendant Hood County)**

133. Plaintiff incorporates by reference all preceding paragraphs.

134. The Privacy Protection Act, 42 U.S.C. § 2000aa *et seq.*, prohibits government seizure of journalists' work product and documentary materials except under narrow circumstances.

135. 42 U.S.C. § 2000aa-6(a) creates a private right of action "against any . . . governmental unit" for violations of the Act.

136. 42 U.S.C. § 2000aa(a) provides that "it shall be unlawful for a government officer or employee . . . to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a . . . communication."

137. 42 U.S.C. § 2000aa(b) similarly prohibits seizure of "documentary materials" possessed by a person "in connection with a purpose to disseminate to the public" information in interstate commerce.

138. Plaintiff is a journalist with an established purpose to disseminate communications to the public. He operates the Hood County Sheepdogs Facebook page, where he reports on local government, interviews candidates for office, and publishes political commentary and analysis. His work is regularly published online and viewed by members of the public.

139. Hood County's officers seized Plaintiff's cell phone, which contained:

a. Journalistic work product, including notes, contacts, and communications related to his news coverage;

b. Documentary materials accumulated through his journalism work;

c. Interviews and records of newsgathering activities; and

d. Other materials possessed in connection with his purpose to disseminate information to the public.

140. Hood County's officers were on reasonable notice that Plaintiff was a journalist engaged in protected newsgathering. Plaintiff operates multiple public Facebook pages devoted to news and political commentary in Hood County.

141. The Privacy Protection Act permits seizure of journalist work product only under narrow exceptions. The relevant "suspect exception" requires probable cause to believe that the journalist "has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. § 2000aa(a)(1), (b)(1).

142. This exception does not apply here for two reasons.

143. First, there was no probable cause to believe Plaintiff committed any crime. The State conceded it could not establish probable cause. The court entered an Order of Discharge. The prosecution was formally rejected for insufficient evidence.

144. Second, even if probable cause had existed, Plaintiff's phone and its contents do not "relate to" the alleged offense of online impersonation. The alleged crime was a Facebook meme posted via the Hood County Sheepdogs page—a page that can be administered from any device by any administrator. Plaintiff's phone contained journalistic materials, a Veteran crisis app, grant application information, and personal data—none of which "relates to" the alleged meme.

145. Under 42 U.S.C. § 2000aa-6(f), a prevailing plaintiff is entitled to "actual damages but not less than liquidated damages of $1,000.00, and such reasonable attorneys' fees and other litigation costs reasonably incurred."

146. As a direct and proximate result of Hood County's violation of the Privacy Protection Act, Plaintiff suffered actual damages.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kolton Krottinger respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages against Defendants Luckie, Deeds, and Sinclair in an amount sufficient to punish and deter;

c. Liquidated damages of not less than $1,000.00 pursuant to 42 U.S.C. § 2000aa-6(f);

d. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000aa-6(f);

e. Pre-judgment and post-judgment interest as allowed by law;

f. A declaratory judgment that Defendants violated Plaintiff's constitutional rights under the First and Fourth Amendments;

g. A declaratory judgment that Hood County violated the Privacy Protection Act;

h. Injunction to restore public commenting on HCSO Facebook page;

i. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Drive, Suite 206
San Antonio, Texas 78245
Telephone: (210) 963-5297
Facsimile: (210) 641-3332

-and-

**LAW OFFICES OF CJ GRISHAM**

*/s/ CJ Grisham*
CJ Grisham
Texas State Bar No. P73653
3809 S. General Bruce Drive
Suite 103-101
Temple, Texas 76502
(254) 405-1726

**Counsel for Plaintiff**