IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KOLTON KROTTINGER, | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:26-CV-00029-O |
| | § | |
| RODGER DEEDS et al, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Defendants Rodger Deeds, James Luckie, and Hood County, Texas's Motion to Dismiss, Brief, and Appendix in Support (ECF Nos. 13-15), Plaintiff Kolton Krottinger's Response, Brief, and Appendix in Support (ECF Nos. 17-19); Defendants Rodger Deeds, James Luckie, and Hood County, Texas's Reply, ECF No. 23; Plaintiff's Notice of Supplemental Authority, ECF No. 24; and Defendants' Motion for a Protective Order, ECF No. 34.  Having read the briefing and considered the applicable law, the Court **DENIES** the Motion (ECF No. 13).  The Court also **DENIES as moot** Defendants' Motion for a Protective Order (ECF No. 34).

## I.     BACKGROUND[1]

This case arises from an arrest over a social media post.  Plaintiff Kolton Krottinger ("Krottinger") is a journalist in Hood County who "reports on local government, interviews candidates, and publishes political commentary and analysis to the public on matters of public interest."[2]  Hood County is a relatively small jurisdiction of 71,000 people.  Krottinger frequently

---

[1] Unless otherwise specified, the facts are taken from Plaintiff's Complaint, ECF No. 1.
[2] Compl. ¶ 10, ECF No. 1.

criticizes public officials including Defendant Sheriff Rodger Deeds ("Sheriff Deeds") and Defendant Ryan Sinclair.[3]  As part of his political involvement, he posts political commentary and satire through a Facebook page he owns called Hood County Sheepdogs.  This page "contains a disclaimer making clear it is for satire and jokes."[4] Krottinger is one of multiple administrators who create posts on the page.  The page does not identify which administrator creates any given post.

On or about October 1, 2025, the Hood County Sheepdogs account made a post on the Granbury Breaking News Facebook page containing a photoshopped image that made it appear as if Tina Brown endorsed Monica Brown for a local school board election.  However, Tina supported Monica Brown's rival.  Tina Brown filed a criminal complaint about the post, and Defendant Investigator James Luckie ("Luckie") began an investigation.  On November 3, 2025, Luckie swore a criminal complaint charging Krottinger with Online Impersonation under Texas Penal Code § 33.07(a).  The criminal complaint stated that Krottinger owned the Hood County Sheepdogs page, that the post was connected to an IP address used by T-Mobile, and that Krottinger used T-Mobile.  It did not state that there were multiple administrators.  Justice of the Peace Sissy Freeman signed a warrant for Krottinger's arrest, citing an "intent to defraud the general public."[5]  Luckie arrested Krottinger pursuant to this warrant on November 5, 2025—the day after the local election.  Despite not having a warrant to do so, Defendants also seized Krottinger's phone at the time of arrest.  They continue to retain it.

Krottinger filed a Motion for Examining Trial pursuant to Article 16.17 of the Texas Code of Criminal Procedure.  The State responded that it was not prepared to present evidence.  On

---

[3] Defendant Sinclair has also filed a Motion to Dismiss that the Court will address in a separate order.
[4] *Id.* at ¶ 9.
[5] Pl.'s App. Supp. Resp. TAB 1 (Arrest Warrant), ECF No. 19.

December 5, 2025, Justice of the Peace Earl "Dub" Gillum entered an Order of Discharge after finding that the State did not establish probable cause.  On December 22, 2025, the Ellis County District Attorney's Office rejected the prosecution because there was "insufficient evidence to establish that Kolton Krottinger was the person who created or posted the online material that was the basis of the alleged offense."[6]

Sheriff Deeds also used the Hood County Sheriff's Office ("HSCO") official Facebook page to post multiple times about Krottinger's arrest.  Specifically, he made (1) a post highlighting Krottinger's arrest as a "'recent and notable case' where speech 'constitutes a criminal offense'"[7] and (2) a post that Krottinger's arrest warrant was issued "after . . . probable cause [was] established."[8] The second post was made on December 3, 2026—after the State said it did not have evidence to defend its case.

The HCSO Facebook page allowed members of the public to post comments on the department's posts from its beginning.  However, after public criticism surrounding the arrest, Sheriff Deeds restricted comments on the Facebook page, only allowing select individuals to comment.  As of December 29, 2025—after the District Attorney's Office formally discharged the complaint—Krottinger was prevented from commenting on a post recognizing HSCO employees even though eight other members of the public had been able to do so.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not require

---

[6] Compl. ¶ 59, ECF No. 1.
[7] *Id.* at ¶ 62.
[8] *Id.* at ¶ 64.

"'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brown v. Nationsbank Corp.,* 188 F.3d 579, 585–86 (5th Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12 motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).  The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.

### B. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from civil damages liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). A government actor is entitled to qualified immunity unless (1) the plaintiff alleges a violation of a constitutional right; and (2) that right was "clearly established" at the time of the alleged violation. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Bailey v. Iles*, 87 F.4th 275, 282 (5th Cir. 2023) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc). The "statute's text and state case law interpreting it" can put an officer on warning that conduct is unconstitutional. *Id*. at 287.

### C. Monell Claims

To impose liability on a municipality under § 1983, a plaintiff must evidence "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of*

*Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). "[M]unicipal liability may be imposed for a single decision by municipal policymakers" when a policymaker's deliberate choice causes a constitutional violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A municipality can also be held liable when "authorized policymakers approve a subordinate's decision and the basis for it[.]" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

## III.    ANALYSIS

When a First Amendment free speech claim arises from an arrest and is inextricable from a Fourth Amendment claim, liability for both depends on whether the officer violated clearly established law under the Fourth Amendment. *Villarreal v. City of Laredo*, 94 F.4th 374, 384-85 (5th Cir. 2024); *see also Sause v. Bauer*, 585 U.S. 957, 959 (2018).

### A.   False Arrest and Malicious Prosecution

Defendant Luckie is not entitled to qualified immunity for the False Arrest and Malicious Prosecution claims because (1) Krottinger's post did not violate the Online Impersonation Statute as no facts demonstrate an intent to defraud and (2) the post was expressive conduct under clearly established law.

#### 1.   Constitutional Violation

The Fourth Amendment requires that an arrest be supported by probable cause. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Likewise, "the gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43 (2022). An arresting officer will not be entitled to qualified immunity against a Fourth Amendment claim if "there was no actual probable cause for the arrest[,] and he was objectively unreasonable in believing there was probable cause

for the arrest." *Bailey*, 87 F.4th at 287 (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017)) (internal marks omitted).

Probable cause requires "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). "Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (quotation marks and citation omitted). "As a corollary, moreover, of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Id.; see also Hernandex v. Terrones*, 397 Fed. App'x. 954, 965 (5th. Cir. 2010) ("officers may be liable for illegal detention under § 1983 for deliberately ignoring exonerative evidence or conducting a reckless investigation").

Luckie lacked probable cause to arrest Krottinger under this statute because the facts known to him at the time could not support a reasonable belief that the post's creator acted with the intent to defraud. *Bailey*, 87 F.4th at 287 (probable cause must be "'assessed in light of legal rules clearly established at the time of the incident,' which includes the statute's text").

The Online Impersonation Statute prohibits a person from "us[ing] the name or persona of another person" "without obtaining the other person's consent" to "post or send one or more messages on or through a commercial social networking site or other Internet website" "with the intent to harm, defraud, intimidate, or threaten any person[.]" Tex. Penal Code § 33.07(a). Deception alone is not enough to constitute fraud; rather, defrauding someone requires using deception "to cause injury or loss, or to illegally obtain money[.]" *State v. Stubbs*, 502 S.W.3d

218, 227 (Tex. App. 2016) (citing Black's Law Dictionary and New Oxford American Dictionary) (analyzing Tex. Penal Code § 33.07 and upholding it as constitutional); *see also* DEFRAUD, Black's Law Dictionary (12th ed. 2024).[9]  This specific-intent requirement that limits reach of conduct covered by § 33.07(a), and "most political satire and advertising parodies would not run afoul of the statute." *Ex parte Bradshaw*, 501 S.W.3d 665, 675 n. 8 (Tex. App.—Dallas 2016, pet. ref'd).

At the time of the arrest, Luckie knew: (1) that the post was made by an account called "Hood County Sheepdogs"; (2) that the substance of the post looked like Tina Brown was endorsing Monica Brown in a school board election; (3) that the Hood County Sheepdogs page contained a disclaimer identifying the page as satire; and (4) that the relevant community, Hood County, is a small jurisdiction.  The "totality of the facts" indicates that there is no intent to defraud as required by the statute.  *Bigford*, 834 F.2d at 1218.  Nothing in these facts suggests that the creator of the post had an intent to injure, cause loss, or obtain money illegally.  That is fatal for a theory of defrauding. *Stubbs*, 502 S.W.3d at 227.

But even if deception were enough, the facts negate any intent to deceive the public.  The relatively small, localized audience within Hood County means that the audience would understand the post is not real and Tina Brown would not endorse a political rival.  Beyond that, the satirical disclaimer on the account page signals to a reasonable reader that content posted by the page is not meant to be taken as a genuine statement.  They indicate this post is satire that protected by the First Amendment and outside the reach of the Online Impersonation Statute. *See Bradshaw*, 501 S.W.3d at 675 n. 8; *Bailey*, 87 F.4th at 283–88.  Together, these facts undercut any

---

[9] As the arrest warrant only described an intent to defraud, the analysis focuses on that intent. *See* Pl.'s App. Supp. Resp. TAB 1 (Arrest Warrant), ECF No. 19 (warrant was for violating the statute "with the intent to defraud the general public").  The facts do not support finding an intent for any other listed action: that is, there was no intent to harm, threaten, or intimidate either.

claim that readers were likely to be deceived.  Accordingly, no reasonable officer would believe the maker of the post acted with the intent of defrauding.

The independent determination that there was no probable cause to arrest Krottinger and dismissal for lack of evidence bolster this conclusion.  After Krottinger filed a Motion for Examining Trial pursuant to Article 16.17 of the Texas Code of Criminal Procedure, the State responded that it was not prepared to present evidence that he committed a crime.  On December 5, 2025, Justice of the Peace Earl "Dub" Gillum explicitly found that the state did not establish probable cause and discharged the indictment.  A few weeks later, the Ellis County District Attorney formally rejected the prosecution, stating that "[t]here is insufficient evidence to establish that Kolton Krottinger was the person who created or posted the online material[.]"[10]  No reasonable officer would have believed there was probable cause to arrest Krottinger on these facts.  Accordingly, Defendant Luckie violated Krottinger's constitutional rights by falsely arresting and prosecuting him for his expressive conduct.

2. Intermediary Doctrine

Defendant Luckie maintains that the independent intermediary doctrine shields him from liability.  When an arresting officer receives a warrant, the independent intermediatory doctrine typically insulates officers from liability for false arrest even in the absence of probable cause as it breaks the chain of causation.  *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024).  However, officers will remain liable in circumstances where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."  *Id*. (quoting *Villarreal*, 94 F.4th at 393); *see also Malley v. Briggs*, 475 U.S. 335, 345 (1986) (doctrine does not apply when "the

---

[10] Compl. ¶ 59, ECF No. 1.

warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable").

As explained above, Defendant Luckie was "objectively unreasonable in believing there was probable cause for the arrest." *Bailey*, 87 F.4th at 287. The post at issue did not violate the statute as no reasonable officer could believe there was intent to defraud. As explained below, the caselaw clearly established that arresting someone for posting political satire on social media is unconstitutional, and the facts indicated that the post is political satire.

### 3. Clearly Established Law

Luckie contends he is entitled to qualified immunity because there is there no "clearly established law which differentiates online impersonation from satire."[11] His argument fails for two independent reasons.

First, whether the post was satire is irrelevant. As explained above, the post does not violate the Online Impersonation Statute regardless of its characterization as satire. Luckie's arrest violated Krottinger's clearly established right to be free from arrest without probable cause because no reasonable officer could conclude the post's creator had the required intent. *Glenn*, 242 F.3d at 313.

Second, even if the clearly established inquiry turned on whether the post was satire, Luckie's assertion is too narrow. Krottinger need not point to a case with identical facts to satisfy the clearly established prong. "The central concept is that of 'fair warning': the law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Bailey*, 87 F.4th at 282 (quoting *Kinney*, 367 F.3d at 350).

---

[11] Reply 2, ECF No. 23.

By the time of Krottinger's arrest, the Fifth Circuit and Texas caselaw clearly established that political satire is protected and does not violate the Online Impersonation Statute. The Fifth Circuit expressly found that "[t]he First Amendment's protections apply to jokes, parodies, satire, and the like" in holding that an officer lacked qualified immunity for arresting someone over a social media post. *Bailey*, 87 F.4th at 283 (citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 54 (1988)). Texas courts have likewise recognized that "most political satire . . . would not run afoul of the statute" because of § 33.07(a)'s specific intent requirement. *Bradshaw*, 501 S.W.3d at 675 n. 8. Because the post here was political satire, and because the law clearly established that arresting someone for political satire under the Online Impersonation Statute violates the Constitution, Luckie is not entitled to qualified immunity.

## B. First Amendment Retaliation

Krottinger also brings a First Amendment Retaliation claim against Luckie and Sheriff Deeds. The Court addresses each in turn.

First Amendment retaliation has three elements: (1) the plaintiff engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against his exercise of constitutionally protected conduct. *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017). Only the third requirement is disputed here.

Defendants argue that Krottinger's pleadings as a whole "negate[] any retaliatory motive"[12] because the investigation opened only after Tina Brown lodged a complaint. Defendant's arguments fail to consider key facts. Krottinger pleads that "only Plaintiff—a known critic of

---

[12] Defs.' Br. Supp. Mot. Dismiss 13, ECF No. 14.

Sheriff Deeds—was investigated"[13] and that he was "selective[ly] prosecut[ed] . . . despite multiple administrators on the Hood County Sheepdog page[.]"[14]  These facts, taken as true at the Motion to Dismiss stage, are enough to create an inference that he was targeted by law enforcement as a result of his speech.  Awaiting an opportune moment to target him following a complaint does not absolve Defendants of a possible retaliatory motive: "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Izen v. Catalina,* 398 F.3d 363, 367 n. 5 (5th Cir. 2005) (internal quotations omitted).

### 1.  Defendant Luckie

Luckie's argument that he is entitled to qualified immunity because he was "following the chain of command, not retaliating[,]"[15] fails for two reasons.  First, the pleadings allow for the inference that Defendant Luckie made independent decisions for which he cannot receive qualified immunity.  The Fifth Circuit recently held that an officer cannot obtain qualified immunity for his discretionary actions taken in the course of carrying out a supervisor's orders if those actions were not objectively reasonable. *Von Derhaar v. Watson*, 109 F.4th 817, 828 (5th Cir. 2024) (affirmed denial of qualified immunity where officer's actions purporting to follow a general safety order were discretionary).

The pleadings plausibly establish an analogous situation.  Though the Complaint alleges that "Sheriff Deeds was the driving force behind the investigation, arrest, and prosecution of Plaintiff"[16] and that Sheriff Deeds supervised, it does not state that Sheriff Deeds ordered every step taken by Defendant Luckie.  Any of Defendant's Luckie's actions—namely, (1) continuing

---

[13] Compl. ¶ 97, ECF No. 1.
[14] *Id*. at ¶ 81.
[15] Def.'s Br. Supp. Mot. Dismiss 13, ECF No. 14.
[16] Compl. ¶ 20, ECF No. 1.

investigating only Krottinger after discovering that the Hood County Sheepdog page had multiple demonstrators,[17] (2) submitting an arrest affidavit omitting the presence of other administrators, and (3) arresting Krottinger without probable cause or sufficient evidence—could all be understood as reflecting his independent judgment, meaning they fall outside qualified immunity protection.

Defendant Luckie also argues that he cannot have a retaliatory motive because Krottinger did not criticize him, only Sheriff Deeds.[18] But arresting someone for his constitutionally protected speech is knowingly unlawful behavior which permits an inference of retaliatory motive. *See Green v. Thomas*, 129 F.4th 877, 890 (5th Cir. 2025) ("Qualified immunity does not protect government officials who knowingly violate the law.") (internal quotation omitted).

Even if Defendant Luckie was simply following orders at every turn, an officer will not receive qualified immunity for following orders that are "facially outrageous"; *i.e.*, orders that require him to "violate clearly established law." *Von Derhaar*, 109 F.4th at 830; *see also Green*, 129 F.4th at 890. Krottinger's history of criticizing Sheriff Deeds makes it plausible that Sheriff Deeds ordered Defendant Luckie to target and arrest Krottinger because of his speech. As established, no reasonable officer would have arrested Krottinger; therefore, such an order would be facially outrageous.

### 2. Defendant Sheriff Deeds

Nor is Sherriff Deeds entitled to qualified immunity. The fact that Defendant Luckie carried out the investigation and arrest does not absolve Sheriff Deeds of liability. *See Doe v. RCISD,* 66 F.3d 1402, 1407 (5th Cir. 1995). A supervisor may be liable under § 1983 where he "personally was involved in the constitutional violation" or where "there is a 'sufficient causal

---

[17] Compl. ¶ 97, ECF No. 1.
[18] Def.'s Br. Supp. Mot. Dismiss 14, ECF No. 14.

connection' between the supervisor's conduct and the constitutional violation." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Krottinger has alleged enough facts to establish plausible personal involvement by Sheriff Deeds. He alleged that Sheriff Deeds supervised the investigation.[19]  Luckie's own qualified immunity argument—that he was following commands—is a tacit admission of Sheriff Deeds's direction and personal involvement.  Additionally, Sheriff Deeds's post labeling Krottinger's social media post as criminal,[20] and his subsequent post affirming an unconstitutional arrest as having evidence and probable cause after the State conceded it lacked evidence to prosecute the case,[21] particularly in light of Krottinger's "frequent" critiques of Sheriff Deeds,[22] allow for the inference that Sheriff Deeds had a retaliatory motive and was involved in the unlawful retaliation. *See Netflix, Inc. v. Babin*, 88 F.4th 1080, 1096 (5th Cir. 2023) (retaliation can be inferred from taking all facts together even when individual facts alone may be consistent with lawful conduct). Sherriff Deeds's argument that his post-arrest comments were simply a "routine administrative function" of "publicly defend[ing] an arrest made by his deputy"[23] raises a factual issue that cannot be resolved on a motion to dismiss.  *Sonnier*, 509 F.3d at 675.

Because facts revealing the extent of Sheriff Deeds's involvement in the investigation and arrest are in Defendant's possession, Krottinger need not plead more at the pre-discovery stage. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730

---

[19] Compl. ¶ 79, ECF No. 1.
[20] *Id*. at ¶ 62.
[21] *Id*. at ¶ 64.
[22] *Id*. at ¶ 11.
[23] Def.'s Br. Supp. Mot. Dismiss 16, ECF No. 14.

(5th Cir. 2018) ("when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint").

### C.   Fourth Amendment Phone Seizure

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects individuals against unreasonable searches and seizures of their "persons, houses, papers, and effects." U.S. CONST. amend. IV.  Subject to a few exceptions, "seizures conducted outside the judicial process, without prior approval by a judge or magistrate, based on probable cause, are per se unreasonable under the Fourth Amendment." *Freeman v. City of Dallas*, 186 F.3d 601, 605 (5th Cir. 1999).  Moreover, the Supreme Court has recognized that cell phones implicate heighted privacy interests, and warrantless intrusions involving them are generally unreasonable absent a recognized exception. *Riley v. California*, 573 U.S. 373 (2014).

It is undisputed that Luckie did not have a warrant for Krottinger's phone.  Luckie argues that he permissibly seized the phone pursuant to a lawful arrest. *United States v. Curtis*, 635 F.3d 704, 711 (5th Cir. 2011).  As explained above, Krottinger's arrest was unlawful, and no reasonable officer would have believed that the social media post was a crime.  Accordingly, Luckie cannot claim qualified immunity pursuant to the incident-to-arrest exception.

Nor can Luckie claim qualified immunity under the brief seizure exception recognized by *United States v. Place*.  462 U.S. 696, 706, 709 (1983) (holding that even a brief detention of personal property must be "properly limited in scope" and becomes unreasonable when its duration exceeds the narrow authority for the seizure).  Even if there had been an initial justification warranting seizure—which there was not—any justification disappeared once the criminal charges were dismissed for lack of probable cause.  Defendants' continued retention of the phone[24] clearly

---

[24] Compl. ¶ 43, ECF No. 1.

exceeds the bounds of *Place* and constitutes an unreasonable seizure under clearly established Fourth Amendment jurisprudence. 462 U.S. 696.

Furthermore, to the extent Krottinger argues a separate Fourth Amendment search claim, he has alleged a valid claim.[25] "On information and belief" pleadings are accepted at the motion to dismiss stage, particularly when the pertinent information is in the defendant's possession. *See Innova Hosp. San Antonio, L.P.*, 892 F.3d at 730. The arrest over his post, seizure of the phone, and mention of his cell phone in the arrest warrant all allow a reasonable inference that Defendants searched his phone in violation of clearly established constitutional rights. *Riley*, 573 U.S. 373; *see also Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) ("a warrantless search of a cellphone—whether supported by probable cause or not—is generally unreasonable").

### D.  First Amendment: Closure of Public Forum

Krottinger has adequately alleged that the sheriff's office unconstitutionally restricted him from a public forum based on his viewpoint. *Robinson v. Hunt County*, 921 F.3d 440, 446-8 (5th Cir. 2019). Defendants' three arguments for dismissal fail.

To begin, Defendants argue that Krottinger does not have Article III standing because he did "not allege that his comments were deleted," only that he "observed the restriction."[26] This mischaracterizes the complaint and misunderstands the law: Krottinger alleged that he personally was restricted from posting because of his speech. That is a paradigmatic First Amendment injury sufficient to confer standing. *See, e.g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756–757 (1976); *Colson v. Grohman,* 174 F.3d 498, 508 (5th Cir. 1999) (the First Amendment shields speech from direct limitations against individuals

---

[25]*Id*. at ¶ 40 ("Upon information and belief, Defendants searched or caused to be searched Plaintiff's cell phone without obtaining a search warrant[.]").
[26] Defs.' Br. Supp. Mot. Dismiss 21, ECF No. 14.

because of their speech); *Davison v. Randall*, 912 F.3d 666, 680–81 (4th Cir. 2019) (holding that being banned from a government official's Facebook page constitutes a cognizable First Amendment injury).

Neither does Defendant's argument that the page is not a public forum fare better. Interactive components of official government social media pages can constitute limited public forums. *See Davison*, 912 F.3d at 680–81; *Kallinen v. Newman*, *Kallinen v. Newman*, 616 F. Supp. 3d 645, 656 (S.D. Tex. 2022), *aff'd*, No. 22-20383, 2023 WL 2645555 (5th Cir. Mar. 27, 2023) (citing *Packingham v. North Carolina*, 582 U.S. 98 (2017) and stating "[t]he First Amendment protects against viewpoint discrimination by the government on a public forum, including one conducted through social media"); *Lindke v. Freed*, 601 U.S. 187, 193 (2024); *O'Connor-Ratcliff v. Garnier*, 601 U.S. 205 (2024); *Swanson v. Griffin*, No. 21-2034, 2022 WL 570079, at \*3 (10th Cir. Feb. 25, 2022) ("[T]he First Amendment protects against viewpoint discrimination by the government in government-created public forums on social media."); *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), *vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021).

Plaintiff has alleged that the page featured open comment since its inception and that he— along with select others—were denied the ability to post only after criticism of his arrest.[27]  This is sufficient to allege a public forum at this stage.  *Evans v. Herman*, No. 4:22-CV-2508, 2023 WL 4188347, at \*3 (S.D. Tex. Apr. 24, 2023), *report and recommendation adopted*, No. 4:22-CV-02508, 2023 WL 4188466 (S.D. Tex. June 26, 2023).

Defendants' suggestion that the Facebook page is not a public forum because allowing comments is the "default setting"[28] for a Facebook page misunderstands the standard.  Whether a

---

[27] Compl. ¶ 103, 106, ECF No. 1.
[28] Defs.' Br. Supp. Mot. Dismiss 20, ECF No. 14.

page is a designated public forum is a fact-intensive analysis that considers "(1) the government's intent with respect to the forum, and (2) 'the nature of the [forum] and its compatibility with the speech at issue.'" *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (alteration in original) (internal citation omitted); *Cornelius v. NAACP Legal Defense and Education Fund*, 473 U.S. 788, 802 (1985); *cf. Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989) ("[A] forum may be considered nonpublic where there is *clear evidence* that the state did not intend to create a public forum") (emphasis added).  Allowing the public to comment on Facebook posts until criticism, and then selectively restricting who may comment, is not consistent with Defendant's argument that the page is not a public forum.  *Robinson*, 921 F.3d at 445–47 (finding viewpoint discrimination where sheriff's office policy welcomed positive comments and deleted critical ones).

Third, Defendants argue that the restriction was viewpoint-neutral because they "restrict[ed] all comments."[29]  But this is not what the complaint alleges.  This factual dispute does not support granting a motion to dismiss where all facts as pled are taken as true. *Sonnier*, 509 F.3d at 675.

Finally, *Robinson* clearly establishes that restricting who may comment in a public forum because of viewpoint is unconstitutional.  921 F.3d 440; *Bailey*, 87 F.4th at 282 (requiring only notice of fair warning, not direct factual parallels, to satisfy the clearly established prong of qualified immunity).

### E.  Monell Claims

Hood County is also liable for Sheriff Deeds's actions.  As stated above, the complaint plausibly alleges that Sheriff Deeds was personally involved in unlawfully targeting Krottinger for

---

[29] *Id.* at 21.

investigation and in Krottinger's unlawful arrest.  His deliberate decisions therein, as well as in selectively restricting the Facebook page, are actions for which Hood County is liable under the final policymaker doctrine.  *Pembaur*, 475 U.S. at 480; *see also Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (a sheriff is a final policymaker for law enforcement purposes under Texas law).

Krottinger has also pled a basis for a ratification claim.  As pled, Sheriff Deeds's posts defending the investigation are more than "a passive acceptance" or "failure to investigate":[30]  they are a deliberate choice to endorse Luckie's unconstitutional conduct.  This satisfies the requirements for asserting a ratification claim. *Praprotnik*, 458 U.S. at 127; *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004).

## IV.    CONCLUSION

Krottinger has sufficiently alleged that Luckie and Sheriff Deeds violated his clearly established rights to be free from arrest without probable cause, malicious prosecution, and First Amendment Retaliation.  *Glenn*, 242 F.3d at 313.  The post serving as the basis for the arrest did not violate the Online Impersonation Statute on its face, and the facts show that it was political satire. Tex. Penal Code § 33.07(a); *Stubbs*, 502 S.W.3d at 227; *Bailey*, 87 F.4th at 287.  Krottinger has alleged sufficient personal involvement and ratification from Sheriff Deeds to state a valid Monell claim against Hood County.  *Praprotnik*, 458 U.S. at 127; *Pembaur*, 475 U.S. at 480. Accordingly, the Motion to Dismiss (ECF No. 13) is **DENIED**.

**SO ORDERED** on this **July 19, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[30] *Id.* at 24.